UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GENOVEVO NINO,

    Appellant,

v.

JEFF A. MOYER,

    Appellee.
_____/

File No. 1:08-CV-721

HON. ROBERT HOLMES BELL

**O P I N I O N**

This matter is before the Court on an appeal from an order of the United States Bankruptcy Court of the Western District of Michigan denying an exemption claimed by Appellant Genovivo Nino[1], a debtor in Chapter 7 bankruptcy proceedings ("Debtor"). Appellee Jeff A. Moyer is the Chapter 7 bankruptcy trustee ("Trustee"). The parties submitted written briefs and the Court heard oral argument on this matter on January 29, 2009.

**I. Background**

Debtor and his wife purchased their residence (the "Property") in 1997, holding it as tenants by the entireties. In 2006, Debtor suffered a massive heart attack and incurred significant medical expenses as a result. On February 20, 2006, Debtor and his wife

---

[1]The parties differ in their spelling of Appellant's name. The Court will follow the spelling used in Appellant's brief.

transferred their interests in the Property to the wife alone by quitclaim deed (the "First Transfer"). That same day, Debtor received a summons and complaint from Spectrum Health for recovery of unpaid medical expenses. On April 26, 2007, on the advice of bankruptcy counsel, Debtor's wife executed a quitclaim deed to return the Property to Debtor and his wife as entireties property (the "Second Transfer"). On May 9, 2007, Debtor filed his petition for bankruptcy, claiming an exemption in the Property pursuant to 11 U.S.C. § 522(b)(3)(8) and Mich. Comp. Laws §§ 600.5451(1)(o) and 600.6023a.

The parties differ in their characterizations of the reasons for the First Transfer. Trustee implies that the First Transfer was an attempt to protect the Property from Debtor's creditors, including Spectrum Health. According to Debtor, he undertook the First Transfer without advice of counsel on the belief that it would help his wife avoid probate in the event of his imminent demise. Debtor claims that when he finally consulted with counsel, he was advised to restore the status of the Property as entireties property.

In the bankruptcy proceedings, Trustee filed an adversary proceeding against Debtor's wife seeking to avoid the First Transfer as a fraudulent transfer. The bankruptcy court dismissed the adversary proceeding on the basis that no meaningful relief could be granted because the Property was already part of the bankruptcy estate. Trustee also filed an objection to the claimed exemption. On May 1, 2008, the bankruptcy court issued an opinion and scheduling order; the opinion stated that Debtor would not be entitled to the exemption if the court determined after an evidentiary hearing that the First Transfer was fraudulent.

The bankruptcy court held its evidentiary hearing on June 23, 2008. On June 24, 2008, the court entered an order denying the claimed exemption. On June 30, 2008, Debtor filed an appeal with this Court challenging the denial of the exemption.

## II. Jurisdiction

The Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a)(1) ("The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees . . . and with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges[.]"). Trustee argues that Debtor does not have standing to appeal because Debtor's appeal challenges *legal* conclusions of the bankruptcy court that were decided in the court's May 1, 2008, opinion and order. Trustee argues that Debtor did not file his appeal within ten days of that order in accordance with the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 8002 ("The notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from."). Instead, Debtor waited to file his appeal until after the bankruptcy court's June 2008 order denying the claimed exemption.

Generally, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute judgment." *Catlin v. United States*, 423 U.S. 229, 233-34 (1945). The purpose of the final judgment rule is to encourage a single appeal of all issues and thereby prevent piecemeal litigation, eliminate delays, and conserve judicial resources. *Cunningham v. Hamilton County*, 528 U.S. 198, 203-04 (1999). In the bankruptcy context,

the rule of finality "is considered in a more pragmatic and less technical way . . . than in other situations." *In re Cottrell*, 876 F.2d 540, 541-42 (6th Cir. 1989). Finality applies "not to the overall bankruptcy case but to the particular adversary proceeding or discrete controversy pursued within the framework cast by petition." *In re Kessler*, 142 B.R. 796, 798 (W.D. Mich. 1992). Thus, in the bankruptcy context, an order is final "if it is distinct and conclusive of the substantive rights of individuals." *Id.*

Trustee mischaracterizes the appeal and misapplies the applicable law. At issue in this appeal is the validity of Debtor's claimed exemption in the Property. Though the bankruptcy court stated its view of the law in its opinion of May 2008, it did not deny the exemption until June 2008. Trustee argues that Debtor should have appealed within ten days of the bankruptcy court's May 2008 order, but such an appeal would have been premature. The bankruptcy court's interpretation of the applicable law in that order was not conclusive of any substantive rights of Debtor or Trustee. The court had not yet denied or allowed the claimed exemption because factual issues surrounding the First Transfer had not yet been determined. Even though Debtor challenges only the *legal* basis for denying the exemption on appeal, the decision that he seeks to overturn is the ruling on the exemption itself. The bankruptcy court did not make this ruling until its second order in June 2008. Courts have frequently held that an order denying an exemption in a bankruptcy proceeding is a final, appealable order. *Cottrell*, 876 F.2d at 542 (citing cases). Trustee would require Debtor to appeal every order of the bankruptcy court determining legal issues before the rights of the parties with respect

to the discrete controversy at issue has been finally adjudicated. This would not serve the purposes of the finality rule. Because Debtor filed his appeal within ten days of the bankruptcy court's order denying the claimed exemption, the Court holds that Debtor has standing to pursue this appeal.

### III. Standard of Review

On appeal, the bankruptcy court's legal conclusions are reviewed *de novo*, and its factual findings are reviewed under a clearly erroneous standard. *Stamper v. United States (In re Gardner)*, 360 F.3d 551, 557 (6th Cir. 2004).

### IV. Analysis

Section 522 of the Bankruptcy Code allows the debtor to exempt

> any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

11 U.S.C. § 522(b)(3)(B). In this case, the "applicable nonbankruptcy law" relied upon by Debtor are Michigan statutes, sections 600.5451(1)(o) and 600.6023a. These statutes exempt from process "real property, held jointly by a husband and wife as a tenancy by the entirety[.]"[2] The parties do not dispute that, prior to the First Transfer, and after the Second

---

[2]The statutes do *not* protect entireties property from joint creditors of both the husband and wife; however, Debtor asserts that there are no joint creditors in the instant case and there is no indication to the contrary by Trustee. The relevant provisions in the two statutes are substantially the same; the primary difference between the two statutes is that section 600.5451(1)(o) is a bankruptcy-specific exemption whereas section 600.6023a is a general exemption from execution of judgment. At least one court has determined, in what appears to be
(continued...)

Transfer at the time of filing for bankruptcy, Debtor held the Property as a tenant by the entireties with his wife. Nor do the parties dispute that Debtor claimed an exemption in the Property under § 522(b) of the Bankruptcy Code. However, the bankruptcy court reasoned that the First Transfer had significant consequences:

> One consequence of the First Transfer was that as a matter of Michigan law, the Debtor and his wife severed the entireties estate by divesting the Debtor of his interest in the Property. In exchange for this severance, the Debtor should have received half of the Property's value from his wife. This value would then have been available for all of his creditors . . . . Consequently, if the Debtor received his share of the Property's value, his individual creditors would have been able to levy on the proceeds and apply them to his individual debts.
>
> The Debtor argues that the Second Transfer vitiates the consequences of the First Transfer because it restored the entireties estate and the *status quo*. This is the Debtor's "no harm, no foul" argument. However, because the Debtor's individual creditors had a right to pursue any value the Debtor might have received from the First Transfer, when the Second Transfer occurred, whatever value the individual creditors could reach was transferred back into property available only to the couple's joint creditors. This prevents me[3] from finding that the Second Transfer was "no harm, no foul." . . .
>
> If . . . Debtor was insolvent when he joined in making the First Transfer, then he was not free to favor his wife over his creditors by permitting her to keep his share of the value of the Property that devolved upon him when they severed the entireties estate.

*In re Nino*, No. DG 07-3398 (Bankr. W.D. Mich. May 1, 2008) (citations omitted). The court concluded that, if half the value of the Property was available to creditors after the First

---

[2](...continued)
*dicta*, that the bankruptcy-specific exemption in section 600.5451(1)(o) is unconstitutional. *See In re Raynard*, 327 B.R. 623, 625 (Bankr. W.D. Mich. 2005). However, even assuming that it is correct, the analysis in *Raynard* does not apply to the general exemption in section 600.6023a.

[3]The Court is perplexed by the use of the first person (apparently in reference to the bankruptcy judge) throughout a decision and order issued by the bankruptcy court.

Transfer, it would not allow the exemption because Debtor could not, by means of the Second Transfer, augment or create an entireties estate using property that would otherwise be available to creditors, citing *Dunn v. Minnema*, 36 N.W.2d 182 (Mich. 1949) and *Newlove v. Callaghan*, 49 N.W. 214 (Mich. 1891).

The bankruptcy court's decision appears to have two grounds for reasoning that the Property (or part of the value thereof) would be available to creditors after the First Transfer. First, the court reasons that the First Transfer terminated the entireties estate, entitling Debtor to half the value of the Property. The court reasons that this value would have been available to creditors. Second, the court reasons that if the First Transfer was fraudulent under Michigan law, then creditors would have been able reach Debtor's interest in the Property from prior to the First Transfer.

Debtor argues that the bankruptcy court's analysis is in error because of the longstanding Michigan precedent holding that creditors cannot complain of a disposition of exempt property. *Kleinert v. Lefkowitz*, 259 N.W. 871, 874 (Mich. 1935) ("A man's homestead is exempt from the claims of all his creditors. As to his homestead, there can be no creditors, and there can be no fraudulent disposition of a homestead. . . . Even if one disposes of his property subject to execution for the very purpose of converting its proceeds into exempt property in the nature of homestead, this does not constitute fraud."); *Farrell v. Paulus*, 15 N.W.2d 700, 702 (Mich. 1944) (holding that the transfer of entireties property to wife would not be set aside as fraudulent because the property would still be unavailable to

creditors as entireties property); *Turner v. Davidson*, 198 N.W. 886 (Mich. 1924) (holding that it is not fraud to use entireties property to acquire other entireties property), *abrogated on other grounds by Glazer,* 72 N.W.2d at 141; *Moore v. Van Goosen*, 229 N.W. 451 (Mich. 1930) (same), *abrogated on other grounds by Glazer*, 72 N.W.2d at 141. This is referred to by the parties as the "no harm, no foul" rule. *See Craft v. United States*, 65 F. Supp. 2d 651 (W.D. Mich. 1999) (citing Michigan cases for the "no harm, no foul" rule), *rev'd on other grounds by* 535 U.S. 274 (2002). Thus, Debtor argues that, because the Property was entireties property prior to the First Transfer, the "no harm, no foul" rule applies, meaning that the First Transfer cannot be fraudulent and the transfer did not make any part of the Property available to creditors.

In denying the exemption, the bankruptcy court relied on *Lasich v. Wickstrom (In re Wickstrom)*, 113 B.R. 339 (Bankr. W.D. Mich. 1990) and *Nathan v. Barbera (In re Barbera)*, No. 94-44556, 1996 WL 446821 (Bankr. E.D. Mich. Aug. 5, 1996). In *Wickstrom*, the court determined that the "no harm, no foul" rule of Michigan law does not prevent a trustee from avoiding the transfer of entireties property by the debtor to his parents. *Wickstrom*, 113 B.R. at 352. The court in *Wickstrom* reasoned that:

> The holdings in these [pre-1979] Michigan cases resulted because exempt property was not property of the estate under § 70(a)(5) the Bankruptcy Act of 1898. 11 U.S.C. § 24 (repealed 1979). Under the Bankruptcy Code, this is no longer the law. All property, including that which a debtor may claim as exempt, now becomes part of the bankruptcy estate. Therefore, cases such as *Cross*, *McMullen*, and *Berry* are no longer cogent.

*Wickstrom*, 113 B.R. at 350 (citations omitted). *Cf. Cross v. Commons*, 59 N.W.2d 41 (Mich.

1953) ("[Because exempt] property does not constitute assets of the bankrupt, its transfer by the bankrupt is of no concern of the trustee of the bankrupt's creditors.").

Debtor argues that the "no harm, no foul" rule is still good law, citing *Rubel v. Brimacombe & Schlecte, P.C.*, 86 B.R. 81 (E.D. Mich. 1988); *In re Korff*, 14 B.R. 189 (Bankr. E.D. Mich. 1981); *Craft*, 65 F. Supp. 2d at 651. However, none of the cases cited by Debtor are directly on point. *Rubel* does not address the issue of transfer of exemptible property prior to bankruptcy proceedings. *Korff* notes that *joint* creditors of the husband and spouse can levy on entireties property, but does not address the effect of transfer of the property. *See Korff*, 14 B.R. at 193. *Craft* involves the issue of whether a tax lien can attach to a person's interest in entireties property, not whether entireties assets are available to creditors in a bankruptcy proceeding.

Nevertheless, the Court is not aware of any Michigan state court decision expressly abrogating the "no harm, no foul" rule. Because the Bankruptcy Code brings all assets of the debtor, including exempt assets, into the bankruptcy estate, the Court agrees that this particular rationale for the "no harm, no foul" rule is no longer valid. However, the Court is not satisfied that the failure of this particular rationale nullifies established Michigan precedent. One of the effects of making exempt assets part of the bankruptcy estate is to give bankruptcy courts jurisdiction to adjudicate creditors' rights in those assets. In *Lockwood v. Exchange Bank of Fort Valley*, 190 U.S. 294 (1903), the Supreme Court held that, under the 1898 Act, because exempt assets are not part of the bankruptcy estate, the bankruptcy

court does not have jurisdiction to consider a creditor's rights in those assets. The bankrupt party in *Lockwood* had apparently waived the right to claim an exemption in a contract. *Id.* at 295. However, the court held that the issue of waiver of the exemption must be pursued in state court because the bankruptcy court lacked jurisdiction to adjudicate rights to exempt assets. *Id.* at 299. The Bankruptcy Code overrules *Lockwood* and now allows the bankruptcy court to adjudicate such rights. *See, e.g.,* 11 U.S.C. § 522(e) and (f) (addressing waiver of exemptions). But whether or not the bankruptcy court has jurisdiction to administer exempt property does not alter the underlying rationale for the "no harm, no foul" rule that a pre-petition disposition of exempt property generally is not fraudulent because it does not harm the creditor.

It might be argued that, because the Bankruptcy Code requires the debtor to claim an exemption in the exemptible property, the Bankruptcy Code gives creditors a potential interest in such assets that they might not have had under the Bankruptcy Act of 1898, to the extent that the debtor fails to claim the exemption. But even under the 1898 Act, the debtor was required to "schedule all his property, and to make 'a claim for such exemptions as he may be entitled to.'" *Lockwood v. Exchange Bank of Fort Valley*, 190 U.S. 294, 298 (1903) (quoting section 7 of the 1898 Act). Consequently, various courts held that a failure by the debtor to claim such exemptions in accordance with the requirements of the 1898 Act could result in a loss of such rights. *See, e.g., In re Gerber*, 186 F. 693, 700 (9th Cir. 1911); *In re Gunzberger*, 268 F. 673 (M.D. Pa. 1920) (noting that Pennsylvania law makes the exemption

at issue personal and waivable); *In re Exum*, 209 F.716 (S.D. Ala. 1913); *In re Harrington*, 200 F. 1010, 1012 (N.D.N.Y. 1912).

  The court in *Wickstrom* cites three possible instances in which a creditor's rights under the Bankruptcy Code might be harmed by a broad application of the "no harm, no foul" rule to a pre-petition transfer of exemptible property. *Wickstrom*, 113 B.R. at 348. None of these hypothetical situations describes the instant case. In the first hypothetical, the entireties property is transferred to a third party and the debtor elects federal exemptions under 11 U.S.C. § 522(d). The court in *Wickstrom* reasons that the trustee should be able to avoid this transfer because "[a]bsent an avoidance by the trustee of the transfer of entireties property, in effect, the debtor is able to exempt property under both state and federal law. This is prohibited." *Id.* However, Debtor in this case has claimed state exemptions under § 522(b). Thus, there is no issue regarding claiming both state and federal exemptions.

  In the second hypothetical, a debtor and spouse transfer entireties property to an insider. *Id.* The court in *Wickstrom* reasons that, unless this transfer is avoided, joint creditors would be harmed because entireties property is always subject to claims from joint creditors. *Id.* However, there is no indication that there are any joint creditors of Debtor and his wife. Moreover, the transfer of entireties property to one spouse does not diminish the estate available to joint creditors of the husband and wife. Such property would be available to joint creditors as entireties property or as property of the wife. Finally, as of the date of petition for bankruptcy, the Property was available to joint creditors because it was held by

11

the Debtor and his wife as entireties property.

In the third hypothetical, the entireties property is sold to a third party, and the proceeds are transferred to another third party for no consideration or to pay an antecedent debt. *Id.* The court in *Wickstrom* reasons that the sale terminates the entireties estate, and because creditors are entitled to reach the proceeds from the sale of entireties property, if they are used to reduce a debt, then the trustee should have the right to avoid the *transfer of the proceeds* to the third party and recover the debtor's share of the proceeds. *Id.* at 349. This hypothetical is not applicable because the Property was not converted to proceeds at the time of the First Transfer, and, thus, no proceeds were transferred to a third party. The bankruptcy court specifically found that Debtor received no consideration for the transfer. (*In re Nino*, No. 07-03398, 06/23/2008 Hr'g Tr. 15.)

After discussion of these hypotheticals, the court in *Wickstrom* further reasons that creditors can reach the debtor's interest in entireties property transferred to a third party because the transfer waives the right to claim an exemption based on an interest held prior to the transfer. *Wickstrom*, 113 B.R. at 352. However, *Wickstrom*, and the cases relied upon by the court in *Wickstrom*, involve interests of the debtor from prior to the filing of bankruptcy. *See Warsco v. Ryan (In re Richards)*, 92 B.R. 369 (Bankr. N.D. Ind. 1988); *Mason v. Kewin (In re Kewin)*, 24 B.R. 158 (Bankr. E.D. Mich. 1982). In the instant case, Debtor claims an exemption based on an ownership interest in the entireties property at the time of filing for bankruptcy.

12

There is a plausible argument that creditors are harmed by *preferential* transfers of exemptible property, and that such transfers should not be subject to a "no harm, no foul" rule. The decisions in *Wickstrom*, *Richards*, and *Kewin* analyzed instances of preferential transfers. *Wickstrom*, 113 B.R. at 341; *Richards*, 92 B.R. at 370; *Kewin*, 24 B.R. at 160. In *Wickstrom*, for instance, the debtor transferred exemptible entireties property to his parents, to whom he owed money from an outstanding loan. *Wickstrom*, 113 B.R. at 341. In the instant case, the bankruptcy court made no finding that Debtor transferred the Property to his wife to reduce any antecedent debt, or that the First Transfer was a preferential transfer. *See* 11 U.S.C. § 547(b) (providing that a trustee may avoid a transfer of interest in property "(1) to or for the benefit of a *creditor*; (2) for or on account of an *antecedent debt* owed by the debtor . . .") (emphasis added). Thus, the court's holding in *Wickstrom* is distinguishable on its facts, and the rationale in *Wickstrom* for abrogating the "no harm, no foul" rule of Michigan law is not persuasive in this case.

The court in *Barbera* followed the rationale of *Wickstrom* in a case where a husband and wife held entireties property and transferred it to the wife without recording the quitclaim deed. *Barbera*, 1996 WL 446821 at *7. The court found sufficient evidence of actual intent to defraud creditors because of the secrecy employed in transferring the property. *Id.* The court cited *Wickstrom* and reasoned that the "no harm, no foul" rule could improperly allow debtors to claim state and federal exemptions. *Id.* at *8. *Barbera* is distinguishable because Debtor does not seek to claim the benefit of state and federal exemptions, and the bankruptcy

13

court in the instant case has not made a finding of actual intent to defraud. To the extent that *Barbera* is contrary to the decision of this Court, it is also not binding on this Court and is not persuasive for reasons already stated with respect to the *Wickstrom* decision.[4]

Thus, to the extent that the bankruptcy court held that the exemption was invalid because creditors obtained rights in the Property after the First Transfer merely as a result of termination of the entireties estate, but in the absence of a fraudulent or preferential transfer, its decision was in error. Moreover, without a finding that the First Transfer was a preferential transfer, the Court is not persuaded by the reasoning of the bankruptcy court that interests of the creditors of Debtor were harmed by the First Transfer or the Second Transfer.

The bankruptcy court found that the First Transfer was constructively fraudulent pursuant to the Uniform Fraudulent Transfer Act, Mich. Comp. Laws 566.31 *et seq*. ("UFTA") because there were sufficient "badges" of fraud, namely that the First Transfer occurred in close proximity to a claim from a creditor, the transfer was made to an insider, Debtor remained in possession of the residence after the transfer, and Debtor received no consideration for the First Transfer. (*In re Nino*, No. 07-03398, 06/23/2008 Hr'g Tr. 15.) However, the UFTA supports the continuing validity of the "no harm, no foul" rule under Michigan law. The UFTA applies to "transfers," which are defined as "every mode, direct

---

[4]The *Wickstrom* decision is also distinguishable because it involves a trustee's right under sections 547(b), 548(a), or 550(a) of the Bankruptcy Code to avoid a pre-petition transfer of property by the debtor. However, avoidance of a transfer of the Property under the foregoing sections is not at issue in this appeal. At issue is Debtor's ability to claim an exemption under Michigan law.

14

or indirect, . . . of disposing of or parting with an *asset* or an interest in an *asset* . . . ." Mich. Comp. Laws § 566.31(l) (emphasis added). The definition of "asset" in the UFTA expressly *excludes* "[p]roperty to the extent it is generally exempt under nonbankruptcy law" as well as "[a]n interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only 1 tenant." *Id.* at § 566.31(b). Thus, the UFTA is consistent with the "no harm, no foul" rule in that exempt property (including entireties property) cannot be subject to a claim of fraudulent transfer under the UFTA. *See Estes v. Titus*, 751 N.W.2d 493, 581-82 (Mich. 2008) ("Therefore, [property] held as tenants by the entirety cannot be the subject matter of a UFTA claim if only one spouse is the debtor. This conclusion fits into the larger statutory purpose of avoiding fraudulent transfers because it is difficult to comprehend how disposing of property that a creditor cannot reach could 'defraud' that creditor."). Therefore, to the extent that the bankruptcy court relied upon a finding of constructive fraud under the UFTA to invalidate Debtor's claimed exemption, its decision was in error.

There is no dispute that Debtor held the Property as entireties property with his wife at the time of filing the petition for bankruptcy. This situation represents another form of a "no harm, no foul" rule because Debtor and his wife have returned the Property to the state of ownership from prior to the First Transfer. There is no evidence of harm to or preferential treatment of Debtor's creditors, as in *Wickstrom*. Debtor has not removed the Property from the bankruptcy estate as of the date of filing the petition, and by recording the quitclaim

deeds, there is no indication that Debtor has attempted to conceal either the First Transfer or the Second Transfer, as in *Barbera*. Considering the policy in Michigan law in favor of protection of a homestead from the claims of creditors, *Schurgin v. Bankers Trust Co. of Detroit*, 286 N.W. 161, 162 (Mich. 1939), and the policy of bankruptcy law to construe available exemptions in favor of the Debtor and in light of the purpose for which they were created, *Lebovitz v. Hagemeyer (In re Lebovitz)*, 360 B.R. 612, 618 (B.A.P. 6th Cir. 2007), the Bankruptcy Code and the applicable Michigan law should not be construed to create a windfall for Debtor's creditors.

For the foregoing reasons, the Court reverses the bankruptcy court's denial of Debtor's claimed exemption in the Property pursuant to Mich. Comp. Laws §§ 600.5451(1)(o) and 600.6023a.

An order shall be entered that is consistent with this opinion.


Dated: February 18, 2009                     /s/ Robert Holmes Bell
                                             ROBERT HOLMES BELL
                                             UNITED STATES DISTRICT JUDGE